CITY SCHOOL DISTRICT OF THE CITY OF CORNING et al., Plaintiffs, v COUNTY OF CHEMUNG, Defendant.

Third Department, November 10, 1976

*Harry Treinin* for plaintiffs.

*Louis J. Mustico* for defendant.

*Walter J. Relihan, Jr. (Joyce Yaple Villa* of counsel), *amicus curiae* for State University of New York.

GREENBLOTT, J. P. Subdivision 2 of section 6305 of the Education Law allows community colleges to recover certain costs from other counties within the State that send students to the college. This controversy concerns capital costs incurred to provide facilities in which such nonresident students can be accommodated. Prior to a recent amendment, effective September 1, 1975, the community college could recover $300 per year for each nonresident student for capital expenses incurred. The statute as amended now requires the State University Trustees to determine and approve the per-student rate of capital charge-back for each college, in an amount not to exceed $300.

Subdivision 4 of section 6305 of the Education Law requires the president of the community college to submit to the county to be charged a list of nonresident students from that county and a voucher for the amount payable for these students within 45 days after the beginning of each term, and the bill must be paid within 60 days of its receipt.

The Code of Standards and Procedures for the Administration and Operation of Community Colleges (8 NYCRR Parts 600-609) implements and clarifies the relevant provisions of

the Education Law. The code provides for a continuing capital budget, one not terminated annually (8 NYCRR 604.3) and limits uses of the capital charge-back to specified purposes. It also determines that share of the per-student charge that can be allocated for each term; before the amendment the rate was $150 per term; after, the per-term rate shall be one half of the approved annual rate for institutions operating on the semester system (8 NYCRR 604.7 [d]). The new regulations, promulgated December 29, 1975, include a schedule for filing of claims. For academic terms commencing on or after January 1, 1976, the request for a capital charge-back rate must be made by May 1 preceding the fiscal year. "For the remainder of the 1975-76 academic year" requests were to be submitted by December 1, 1975 (8 NYCRR 604.7 [e]).

Plaintiff submitted the proper statements to defendant for the fall semester, 1975, in the amount of $157,340, reflecting the rate under the statute before amendment. Defendant refused to pay, claiming that the new statute applied to the disputed period and that plaintiff showed a surplus of over $1 million in its capital reserve account, precluding it from recovering capital charge-backs.

The plaintiff does in fact have $1,466,337 remaining in its capital reserve account and has budgeted $131,500 for capital improvements for fiscal 1975-1976. Plans for construction of a multiple-use facility at a cost of $4 million have been submitted to the Legislature for approval, but have not passed all necessary hurdles. A "freeze" on building is currently in effect for the State University system.

Plaintiff contends that the amendment does not apply to the fall term and that defendant is responsible for charge-backs despite a surplus of capital reserves. Defendant contends that the new law should be applied, limiting the amount of charge-backs and that no charge can be assessed in any case, since the petitioner maintains a surplus in its capital reserve account.

The first issue involves a question of statutory interpretation, requiring this court to determine what law the Legislature intended to control from the effective date of the law (September 1, 1975) to such time as the Trustees of the State University could implement the changes adopted by the Legislature. A statute becomes the law on the stated effective date (Legislative Law, § 43). However, when it would be impossible to institute change immediately and there is a need for some

law to apply, the Legislature must intend the old law to remain in effect until the new law can be effectuated. The present case demonstrates why this is so. Subdivision 4 of section 6305 of the Education Law requires the community college to submit a list of nonresident students and a voucher to each county from which these students come, within 45 days after the term begins, and the county must pay its share of capital costs, within 60 days of receipt of the voucher. Thus, the whole process takes a maximum of three and one-half months. Because vouchers must be submitted within 45 days of the term's commencement, in order to comply with the statute the State University Trustees would have been. required to establish and promulgate new procedures to effectuate the change in the law, solicit figures and requests for rates from each community college, perform the necessary studies and computations, and issue the appropriate rates, all by the middle of October, 1975. This was clearly an impossibility. Since regulations are effective only upon filing (NY Const, art IV, § 8), they could not be applied retroactively. Thus, for the interim the old law remained in effect.

The new regulations issued by the trustees support this conclusion. The regulations establish new guidelines for the submission of requests. They require requests by May 1 for the succeeding college fiscal year. Realizing that this left a void, the regulations made special provision for the *remainder* of academic year 1975-1976. These regulations also were made to apply to terms commencing after January 1, 1976. Thus, the regulations did not implement the new law for the fall term and the old law had to be applied.

Defendant's argument on the second issue appears to combine two arguments. First, the college can only collect capital charge-backs for expenses incurred during the academic year. Presumably, per-student allocation of the budgeted $131,500 in capital improvements would result in a reduced bill for defendant. Second, the existence of a surplus in the capital reserve accounts precludes the college from recovering any contribution from defendant.

Neither argument is valid. The statute allows recovery for expenses incurred to provide facilities in which nonresident students can be accommodated (Education Law, § 6305, subd 2). The regulations expand on the uses to which these capital funds may be put (8 NYCRR 604.7). Neither the statute nor the regulations require that the expenses be incurred in any

particular year. The regulations state that the capital budget does not terminate annually (8 NYCRR 604.3), but is a continuous account. That expenditures are minimal in one year is irrelevant, since there have been past expenditures and there will be future expenditures. As an example, if a college purchased a large tract of land one year, they would be entitled to recover the $300 per student that year, but, defendant argues, they could not recover for that expense in any other year. Defendant's first point is therefore rejected.

Defendant's second point, insofar as it is based on limitations in the regulations on the amount chargeable depending on the size of the capital fund, is also rejected since those regulations were not intended to be applicable to the fall, 1975 semester.

Plaintiff is entitled to judgment in the amount of $157,340 representing the capital charge-backs for the fall semester at the rate of $150 per student, and interest from the effective date of the regulation.

The judgment should be directed to be entered in favor of plaintiff in the amount of $157,340, together with interest from December 29, 1975.

KANE, J. (dissenting). Subdivision 2 of section 6305 of the Education Law was amended by chapter 646 of the Laws of 1975 to read, in applicable part, as follows: "together with *a* further *sum* of not to exceed three hundred dollars each year *to be determined and approved by the state university trustees* for each such non-resident student on account of the local sponsor's share of the capital costs incurred to provide facilities in which such non-resident students can be accommodated". (Emphasis supplied.)

In relation to payment of the sum so determined, subdivision 4 of that section provides that "The chancellor of the state university, or such officers or employees thereof as shall be designated by the chancellor in the manner authorized by the state university trustees, shall notify the chief fiscal officers of each county of the approved annual operating and capital charge-back rate for each community college." (Education Law, § 6305, subd 4.)

The procedure to be followed under the new law seems as plain as its intent. The State University Trustees are to determine the appropriate capital charge-back sum for each community college. The president of such a college submits a

voucher to the county to be charged and its chief fiscal officer is then notified of the approved rate for that college and pays the indicated amount. We fail to see why the defendant should be held responsible for payment of the maximum $150 charge per nonresident student assessed against it merely because the State University Trustees found it difficult or inconvenient to comply with the new law which became effective September 1, 1975. The majority's suggestion that it was impossible to do so is not founded on any statement in the agreed facts and amounts to speculation. Its emphasis on the 60 days within which the billed county must make payment is misplaced for it appears obvious that the statute did not intend that such a time limit would commence running until the trustees performed their function and notified the county charged of the rate previously approved. While the trustees may undoubtedly determine that the full term limit of $150 should apply for this community college, they have not yet approved any appropriate sum as contemplated by the statute. Any reliance on their old regulation is patently unwarranted inasmuch as it was based upon the former statute which had inflexibly set the annual sum at $300 for each nonresident student.

Accordingly, the present action is premature and we would enter judgment in defendant's favor dismissing the complaint.

MAIN and HERLIHY, JJ., concur with GREENBLOTT, J. P.; KANE and REYNOLDS, JJ., dissent and vote to dismiss in an opinion by KANE, J.

Judgment directed to be entered in favor of plaintiff in the amount of $157,340, together with interest from December 29, 1975.